PRICE, Judge.
Plaintiff, Lynell Reliford, appeals a judgment of the district court rejecting his demand for additional workmen’s compensation benefits. Named defendants in this suit are Fitzgerald Contractors, Inc., plaintiff’s employer at the time of the work-accident, and its compensation insurer, The Continental Insurance Companies. The sole issue on appeal is whether the trial court’s conclusion that plaintiff was not disabled after May 6, 1979, is clearly wrong. Our review of the record reveals substantial evidence to support the trial court’s findings and we affirm.
Plaintiff was employed by defendant as a general laborer on September 5, 1978, and at the time of the accident, was driving a stake with a sledge hammer. In an attempt to avoid striking a co-worker who had been holding the stake, plaintiff abruptly diverted his swing and twisted his back. Although plaintiff completed the day, he related to his co-worker the fact that he was experiencing pain in his lower back as a result of the accident. The next morning plaintiff drove to work and reported to Bob Fitzgerald, his supervisor, that he was experiencing a great deal of pain and was going to see a doctor.
On September 6, 1978, plaintiff was initially examined by Dr. James Eddy, a general surgeon, who diagnosed plaintiff’s injury as a low back strain. Despite four additional examinations of plaintiff, the doctor was unable to verify with objective findings plaintiff’s continued complaints of pain.
Dr. Brook Garrett examined plaintiff three times in September and finding no *491 objective signs of injury advised plaintiff to return to work on October 2. On October 5, 1978, plaintiff again complained of pain and Dr. Garrett requested that plaintiff enter the hospital in order that a myelogram could be performed to ascertain any possible injury. Plaintiff entered Schumpert Hospital on October 6, but refused to have the myelogram performed. He was discharged on October 9.
Plaintiff was next examined by Dr. Lewis Jones, an orthopedic surgeon who diagnosed plaintiff’s injury as a myoligamen-tous strain of the lumbar spine. Dr. Jones prescribed anti-inflammatory medication and outpatient physical therapy. After three visits Dr. Jones advised plaintiff to return to work on October 30. Plaintiff did not return to work and returned to Dr. Jones on November 8. Finding no objective signs of injury, Dr. Jones referred plaintiff to Dr. Donald Smith.
Dr. Smith, a neurosurgeon, examined plaintiff on November 15 and November 19 in response to plaintiff’s continued complaints of lower back pain (plaintiff also complained of chest pains on November 19). Dr. Smith found no lumbosacral muscle spasm, malalignment of the spine, or other objective signs of injury. His examination revealed no neurological problems although he was of the opinion plaintiff had sustained a lumbosacral strain. Dr. Smith felt that plaintiff would be able to return to work in one or two months if he continued his physical therapy in the form of prescribed exercises for the lower back.
Dr. Jones again examined plaintiff on November 27, December 12, and December 26, 1978. Although there was some indication of a slight flattening of the lumbar spine on November 27, Dr. Jones found insufficient objective signs of injury to substantiate plaintiff’s continued complaints of pain, and therefore referred plaintiff to Dr. Phillip Osborne.
Dr. Osborne, director of the Shreveport Pain and Rehabilitation Center, hospitalized plaintiff at Doctors Hospital in January 1979 in response to plaintiff’s complaints of chronic low back pain. Dr. Osborne found no physical injury and felt that further medical treatment would be to no avail. Dr. Osborne requested psychiatric consultation for plaintiff from Dr. James Phillips.
Dr. Phillips examined plaintiff at Dr. Osborne’s request while plaintiff was hospitalized at Doctors. Dr. Phillips’ initial consultation with plaintiff was on January 17, 1979. As a result of this examination Dr. Phillips was able to diagnose plaintiff’s complaint as a “psychophysiological muscu-loskeletal disorder of the low back.” This was described by Dr. Phillips as a “condition of physical symptoms based on emotional conflicts and emotional stress.” Dr. Phillips opined that the accident sustained by plaintiff on September 5, 1978, had initiated plaintiff’s back problem which had been perpetuated by emotional stress and anxiety. Plaintiff had related to Dr. Phillips a history of lower back pain occurring in the three previous years. Plaintiff recounted how he had never had this much trouble overcoming the problem. Dr. Phillips’ opinion was that plaintiff had become extremely anxious by January 1979 over his situation and was converting his anxiety into muscle spasm with a continuation of pain. During a month-long hospitalization in Brentwood Psychiatric Hospital, Dr. Phillips instructed plaintiff in the techniques of self-hypnosis and biofeedback to help him control his muscle tension. After a period of outpatient care, plaintiff was given a release by Dr. Phillips to return to work effective April 12, 1979.
Plaintiff did not return to work and on May 30, 1979, was again examined by Dr. Jones. Plaintiff stated to Dr. Jones at that time that his back pain was better but still troublesome. After seeing plaintiff again on May 18, Dr. Jones referred plaintiff back to Dr. Smith.
Dr. Smith’s examination of plaintiff on June 20 again revealed no physical evidence of injury. Plaintiff’s range of motion of the lower back was entirely normal and since eight months had passed since Dr. Smith’s last examination of plaintiff, he concluded that plaintiff was able to resume his normal work activities.
*492 Plaintiff did not return to work and instead returned to Dr. Jones on June 28. Dr. Jones’ examination again revealed no objective findings and plaintiff was given a written release to resume his work activities. Plaintiff returned to Dr. Jones on August 8 complaining of problems with his upper and lower extremities, a drawing sensation in the left side of his face and tongue, and a “swimming” in his head. Dr. Jones felt that plaintiff had psychosomatic problems with possibly a conversion reaction, and therefore referred plaintiff again to Dr. Phillips. Dr. Phillips, feeling he had nothing else to offer plaintiff, refused to see him. Plaintiff returned to Dr. Jones on August 14 stating that in addition to the already mentioned problems, he had been experiencing an earache since injuring his back in September 1978. Dr. Jones advised plaintiff that he had nothing else to offer him and released plaintiff from his care at that time.
Plaintiff received weekly compensation benefits until May 6, 1979. The payments were terminated on the basis of the psychiatrist’s release of plaintiff dated April 11, 1979. In addition to the benefits paid plaintiff, the defendants have paid hospital and medical expenses amounting to $11,656.10.
Plaintiff began work as a delivery truck driver on January 7, 1980, and was still working in this capacity at the time of trial. Plaintiff has received prescriptions for pain medication from the LSU Medical Center and the Shreveport Mental Health Center.
Plaintiff filed this suit April l\l980, and after a trial on the merits, his demands were rejected upon the trial court’s finding that plaintiff was not disabled after May 6, 1979. \
The drawn-out progression of medical examinations with inconclusive physical findings is supportive of a conclusion that plaintiff’s claimed job disability after the termination of benefits is psychological in nature. The existence of such a mental condition must be proven, as any other disabling injury, by a preponderance of the evidence, and it must be shown that the disability was causally connected to the work-accident. The reviewing court must analyze such claimed disabilities with utmost caution in view of the nebulous characteristics of the condition and the possibility of the symptoms being easily feigned; the evidence is to be scrutinized carefully and every precaution taken to guard against unjustified claims. Davenport v. McCullough Services Baroid Division, 388 So.2d 453 (La.App. 2d Cir. 1980); Victoriana v. Orleans Parish School Board, 346 So.2d 271 (La.App. 4th Cir. 1977).
In the instant case, a review of the lengthy medical history of plaintiff since the work-accident shows that the treating orthopedic specialist and neurosurgeon had both determined that plaintiff was capable of resuming his work activities. The psychiatrist in releasing plaintiff by letter dated April 12, 1979, noted that plaintiff had “reached the maximum benefit of the treatment and is considered able to return to work as of April 12, 1979.” Dr. Phillips testified that plaintiff had recovered sufficiently to control any discomfort he might have.
We think the record sufficiently shows that any residual pain plaintiff might have encountered after Dr. Phillips’ release would not be substantial or disabling. Dr. Phillips released plaintiff to resume his previous work activities with full knowledge that this consisted of heavy manual labor. This evidence heavily preponderates against a finding of disability. We additionally note Dr. Phillips’ testimony that any stress-induced pain experienced by plaintiff subsequent to his release would not in his opinion be causally related to the work-accident of September 5, 1978.
Therefore in view of the evidence disclosed by the record and discussed in this opinion, we conclude that the finding of the trial court that plaintiff was not disabled after May 6, 1979, is supported by substantial evidence. Finding no manifest error in the trial court’s factual conclusion, the judgment appealed is affirmed. Costs to be assessed to plaintiff-appellant.