BOWES, Judge.
Plaintiff-appellant takes this appeal from a judgment of the trial judge finding him temporarily and totally disabled within the scope of the Workmen’s Compensation Act. Plaintiff alleges total and permanent disability. The trial court, in well-written reasons for judgment, found that plaintiff’s injuries were resolved as of May 11, 1981. We affirm.
Michael Batiste suffered injury to his back on February 21, 1980, in an accident which occurred during the course and scope of his employment. The facts of the accident are not contested; (plaintiff was riding in the bed of a truck, with several other workers, when the truck hit a hole and Batiste was slammed against a piece of iron in the bed); the sole issue at trial was the extent of the injury. Appellant was paid compensation from March 1, 1980, through February 6, 1981, at the rate of $148.03 per week. He contends that he continues to suffer severe and debilitating pain in his back and legs, which pain results from a psychiatric condition of “hysterical conversion”, as opposed to any continuing “objective physical” impairment.
Appellant was examined and treated by several doctors. Immediately after the accident, he was referred by defendant to a *1228 Dr. Albrecht, in Reserve, who treated him for two weeks. He was given pain medication, X-rays were taken, and some form of therapy initiated. After two weeks, appellant received permission to be treated by his family doctor, Dr. Roland Waguespack (Dr. Waguespack’s records show his first treatment of plaintiff was on February 29th, eight days after the accident). Dr. Waguespack again took x-rays, which were interpreted as being within normal limits. Other tests were performed, physical therapy was continued, and a back brace, a muscle relaxer and a pain medication were prescribed. Mr. Batiste was also given shots to reduce muscle spasms, as part of his ongoing therapy.
The initial diagnosis was muscle strain due to injury; after continued treatment of at least once a week, Dr. Waguespack began to suspect a possible ruptured disc in the plaintiffs lower back, and felt that a myelogram was in order. However, in April, defendant’s insurer had arranged for Batiste to visit Dr. Kenneth Adatto, an orthopedist, who began treating plaintiff concurrently with Dr. Waguespack. Dr. Waguespack stated that under the circumstances he felt he was not in a position to tell Dr. Adatto how to handle the case, and so did not order a myelogram. Dr. Wagues-pack continued the conservative measures of physical therapy and medications, at the suggestion of Dr. Adatto, through the time of the trial. Dr. Waguespack had concluded that perhaps plaintiff had a “weak back” syndrome, and that he would continue with treatment, even though he couldn’t find anything physically wrong, because the treatments seemed to help for short periods of time. Waguespack also postulated that any benefits of therapy were purely psychological if plaintiff did suffer “conversion reaction.”
Dr. Adatto felt that Batiste suffered a lumbar syndrome — muscle and ligament strain — and that exercise and medication were sufficient to effect recovery. Accordingly, the conservative type treatments were still continued until May when Dr. Adatto noted increasing spasms and recommended an electromyelogram and nerve conduction studies. The tests were normal. In June, 1980, Dr. Adatto believed that Batiste had a bruised spine and advised him to attempt to go back to work, so that any possible pre-rupture condition might be more fully brought out. Plaintiff had not, in actuality, attempted to return to work.
In July, Dr. Adatto ordered a radiculo-gram on the L4, L5 and L5 SI levels of appellant’s back, because he continued to suffer a lot of pain. This test was performed in September and the radiculogram was positive on the right side. Following this, the record reveals that Mr. Batiste continued to complain of worsening pain. In December, a lumbar myelogram and lumbar discogram were performed. The results of both of these tests were considered normal by Drs. Adatto and Watermeier. The myelogram, which was considered normal, was given the most credence.
By February, 1981, Adatto’s associate, Dr. John Watermeier, began to suspect that Batiste may have suffered some hysterical conversion, because he continued to complain of pain despite a lack of objective findings. Dr. Watermeier defined “hysterical conversion” or “conversion reaction” as a psychoneurosis. Generally, this condition is characterized by the substitution through psychic transformation of physical symptoms [1] for anxiety. Tranquilizing medication was prescribed and the patient was advised to “return” to work. Batiste still did not attempt to do so.
In April 1981, Dr. Watermeier’s clinical impression was lumbar neuritis, inflammation of the nerves of the lower back. On May 11, 1981, Watermeier was unable to find any objective findings and recommended appellant consult another physician for a second opinion, and also that he see a psychiatrist. As of that date, Dr. Water- *1229 meier felt that the plaintiff could not and should not perform heavy manual labor.
On March 30, 1981, Mr. Batiste was examined by Dr. Harold Stokes, an orthopedic surgeon, at the request of defendant’s insurer. Dr. Stokes found no evidence of physical injury, and there were no findings by him to prevent appellant from his normal occupation. In July, 1981, Mr. Batiste saw Dr. Carl Culicchia, a neurosurgeon, again at the behest of defendant, who found no neurologic injury or disorder to account for the symptoms complained of. No functional disability was assigned, and Dr. Culicchia suggested appellant return to full activity.
In March, 1982, plaintiff was evaluated by Dr. Chester Scrignar, a psychiatrist, whom he visited on his own, or his counsel’s, initiative. After the interviews (there were two interviews with the plaintiff and one with his girlfriend, Miss Harvey), Dr. Scrig-nar diagnosed “post-traumatic stress disorder with depression.” According to this physician, the pain experienced by plaintiff was directly related to the accident, and that, as of the time of the examination, Mr. Batiste was absolutely unable to return to work. In addition, it was his opinion that, without psychiatric treatment, it was highly unlikely that Batiste’s neurosis or pain manifestation would have improved.
Defendant then sent Batiste to Dr. Herman Columb, a psychiatrist of their choice, who found no evidence of conversion reaction and felt that appellant could return to work.
The above summary of available medical information indicates to this court that by May of 1981 any pain which appellant was experiencing was no longer explicable by neurological, orthopedic, or internal medicine. If Mr. Batiste still suffered, there were no objective findings to account for such. If Mr. Batiste remained incapacitated at all after May, 1981, his problems would, therefore, in our opinion, have been of a psychiatric nature.
We are mindful of the duty of this court to review such claimed disabilities in workmen’s compensation cases with utmost caution. Because such symptoms often can be easily feigned, the evidence must be carefully scrutinized and every precaution taken against unjustified claims. Reliford v. Fitzgerald Contractors, 401 So.2d 490 (La.App. 2nd Cir.1981). The nature of the claim, necessarily subjective, should be construed together with as much objective evidence as available, in order to reach a fair and reasonable conclusion.
With deference to all the physicians involved, and although we may have given a slightly larger award, we find the conclusion of the trial court to be a fair and reasonable judgment. Whether that court found the opinion of one psychiatrist or some other physician more persuasive than that of another is a fundamental exercise of the trial judge’s discretion in evaluation of witnesses. His factual conclusions are entitled to great weight and should not be disturbed in the absence of manifest error.
.... where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring, 283 So.2d 716 (La.1973)
There was testimony relative to plaintiff’s diminished sexual capacity, social interests, etc., but these are not relevant considerations in this workmen’s compensation case. The issue to be decided is whether or not plaintiff-appellant is able to return to work at his former occupation. The preponderance of the evidence indicates that he is. We find, as did the trial judge, that the date plaintiff was referred for a second opinion, and additionally to a psychiatrist, operates as the last date appellant could be *1230 found disabled (the date he was effectively discharged by his chief treating physicians).
From the record, and from Dr. Water meier’s letter of February 10, 1981, to defendant’s insurer, stating that Mr. Batiste could resume regular work activity, as there was no evidence of orthopedic pathology, we find that it was reasonable at that time for appellee to suspend the regular compensation benefits of plaintiff. Consequently, we cannot say that appellees acted arbitrarily or capriciously in light of the explicated medical testimony.
Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by appellee.
AFFIRMED.

. Stedman’s Medical Dictionary, Fifth Unabridged Lawyer’s Edition, Anderson Publishing Co., 1982.