LeBLANC, Judge.
Plaintiff, Edward Westley, appeals from a judgment rejecting his worker’s compensation claim for disability benefits, penalties and attorney’s fees.
On August 18, 1984, plaintiff was employed by defendant, Land & Offshore, as a painter working on a platform under construction. He was injured on that date when he fell from the bucket of a crane and landed on his head and neck. Plaintiff was rendered unconscious by this fall, but regained consciousness within a few minutes. He was initially taken to the South Louisiana Medical Center where x-rays were taken which proved normal. Later that same evening, he was taken to the emergency room of Terrebonne General Medical Center where a CT scan of his head was performed, the results of which were also normal. Thereafter, plaintiff was discharged with a recommendation for outpatient treatment consisting of muscle relaxants, pain pills, a cervical collar and bedrest. His injuries were diagnosed as a concussion, a severe cervical strain, a lumbar strain and contusions.
When plaintiff subsequently continued to complain of head, neck and back pain and stiffness, he was hospitalized for diagnostic tests from August 29 through September *511 12. The results of these tests were essentially normal, although a cervical myelo-gram showed a minimal bulge of questionable significance at the C5-6 level and a CT scan of the lumbar spine showed a mild bulge at the L3-L4, L4-L5 and L5-S1 level. It was recommended that plaintiff continue with conservative care.
Plaintiff subsequently consulted Dr. John Schuhmacher, a neurosurgeon, on October 3 and November 5, 1984. Dr. Schuh-macher indicated that his examination of plaintiff on October 3 was inconclusive because of what he regarded as hysterical behavior and uncooperativeness on the part of plaintiff. He felt that a psychological evaluation was necessary to determine whether this behavior was genuine or feigned. In any event, on plaintiffs November 5 visit, Dr. Schuhmacher suggested that plaintiff could return to work since he found no objective physical findings to support plaintiff's complaints.
Upon the recommendation of his attorney, plaintiff consulted Dr. Daniel Seltzer, an orthopedic surgeon, on November 26, 1984. Based upon his review of plaintiffs previously taken CT scans and myelo-grams, Dr. Seltzer indicated he did not feel plaintiff was capable of employment on that date. However, Dr. Seltzer also noted that he could not correlate the magnitude of plaintiffs complaints with the findings revealed upon physical examination of plaintiff.
On December 4, 1984, plaintiff began seeing Dr. Oliver Sanders, Jr., a psychiatrist. At the time of Dr. Sander’s deposition on November 26, 1985, plaintiff was seeing him once every two weeks for psychotherapy. Dr. Sanders stated an opinion that plaintiff was incapable of working or even of physically caring for himself. He diagnosed plaintiff's condition as “post-traumatic stress disorder” resulting from the fall he suffered. Dr. Sanders described this condition as an anxiety disorder in which the patient’s thoughts are dominated by flashbacks of a traumatic event. Dr. Sanders also felt plaintiff suffered from a closed head injury, which he believed was the cause of plaintiff’s inability to care for himself, as well as the cause of the memory and communication problems allegedly experienced by plaintiff.
In any event, plaintiff has not returned to work since the accident. He was paid worker’s compensation benefits, as well as all medical expenses, from the date of the accident through November 9, 1984. Subsequent to the termination of compensation benefits, plaintiff filed the instant suit against Land & Offshore and its worker’s compensation carrier, The Fidelity and Casualty Company of New York. Following trial of this matter, the lower court rendered judgment dismissing plaintiff’s claims. Plaintiff has now appealed.
In the instant case there is no question that plaintiff was injured in the course and scope of his employment and was disabled at least until November 9,1984. The issue presented is whether his disability continued after that date. Plaintiff maintains that, as a result of the accident, he is currently suffering from a traumatic neurosis or post-traumatic stress disorder which disables him from working. In his brief, plaintiff describes this condition as follows:
Sometimes this neurosis manifests itself in a physical way. This condition should more accurately be termed a “conversion reaction” in which certain conflicts and attitudes of the individual are repressed and are converted into a physical symptom which gives him adequate reason for not doing or facing things which he is hesitant to face or which he wishes to escape, without his realizing consciously what he is doing.
According to the testimony of plaintiff and his father, plaintiff has been unable even to care for himself since his fall. He has lived with and been cared for by his parents since that time. Plaintiff alleges he is unable to work because he has no strength in his arms, back, head and neck and is in continuous pain. He testified that he has also experienced problems with his memory and speech, including the development of a stutter, which impedes any possibility of employment. Plaintiff maintains that these symptoms are attributable to the post-traumatic stress disorder which he developed as a result of his work accident.
*512 A neurotic disability which results from an accident in the course and scope of employment is compensable. Williams v. State, 489 So.2d 461 (La.App. 3rd Cir.1986). However, a court must examine such claims with the utmost caution in view of the nebulous characteristics of such conditions and the possibility of the symptoms being easily feigned. Hughes v. Royal Globe Ins. Co., 496 So.2d 1241 (La.App. 5th Cir.), writ denied, 497 So.2d 1388 (La.1986); Reliford v. Fitzgerald Contractors, Inc., 401 So.2d 490 (La.App. 2d Cir.1981). Due to the subjective nature of the claimed disability, the evidence must be carefully scrutinized and every precaution taken to guard against unjustified claims. Id.
In deciding whether an employee has proven a claimed disability, the totality of the evidence, medical and lay, must be considered. It is the trial court’s function to determine the weight to be accorded the medical and lay testimony. The court may accept or reject an opinion of a medical expert, depending upon what impression the qualifications, credibility and testimony of the expert made on the court. In evaluating the testimony of an expert, the court should consider the opportunity a physician had for observation and examination of the patient. Westley v. Pressure Services, Inc., 452 So.2d 354 (La.App. 1st Cir.1984); Woods v. Petroleum Helicopters, Inc., 415 So.2d 978 (La.App. 1st Cir.1982). A trial court’s factual findings as to disability are entitled to great weight and will not be disturbed on appeal in the absence of manifest error. Id.
After reviewing the evidence, we find no manifest error in the trial court’s factual finding that plaintiff was not disabled as a result of his work-related injury. Initially, we note that the trial court had the benefit of personally observing plaintiff and his demeanor during his testimony. Further, the medical evidence is clear that there is no correlation between the physical findings made upon examination of plaintiff and the magnitude of his complaints. In fact, Dr. Schuhmacher indicated he could find no objective evidence to support plaintiff’s symptoms and suggested that plaintiff return, to work as of November 5, 1984. While Dr. Sanders, to the contrary, felt that plaintiff was disabled, it should be noted that Dr. Sanders administered no medical or psychological tests to corroborate his conclusions. Moreover, while Dr. Sanders believed plaintiff suffered from a closed head injury, he indicated that he would defer for the most part to a neurologist on this point. Dr. Schuhmacher, the neurologist who examined plaintiff, found no objective evidence of any such injury. For these reasons, and in view of the trial court’s great discretion in weighing evidence and making factual findings, the judgment of the trial court is affirmed. Appellant is to pay all costs of appeal.
AFFIRMED.