523 So.2d 812 (1988)
Edward WESTLEY
v.
LAND & OFFSHORE and Underwriters Adjusting Company.
No. 87-C-2481.
Supreme Court of Louisiana.
April 11, 1988.
Frank A. Bruno, Bruno & Bruno, New Orleans, for applicant.
Ronald L. Ranzello, for respondent.
MARCUS, Justice.
This lawsuit involves a claim by Edward Westley, Jr. against his former employer, Land & Offshore (L & O), and its insurer to recover temporary total benefits, medical expenses and penalties and attorney fees under the Louisiana Worker's Compensation Law.
The record reflects that plaintiff was employed by L & O as a painter and sandblaster. On August 18, 1984, plaintiff was working on a platform under construction when he fell at least 10 feet from the bucket of a crane and landed on his head and neck. Plaintiff then tumbled down a set of stairs at least 25 feet.[1] The fall rendered plaintiff unconscious for a couple of minutes and resulted in a concussion, cervical and lumbar strains, and contusions of the head and shoulder.
Plaintiff was originally seen in the emergency room and it was decided that he would be treated as an outpatient with muscle relaxants, pain pills, a cervical collar and bedrest. He was seen in the office approximately one week later and was found to have increasing symptoms of neck stiffness, headache and back pain. It was *813 decided that he would be admitted for observation and further evaluation. Plaintiff was admitted on August 29, 1984 and remained in the hospital until September 12, 1984.
L & O paid compensation benefits in the amount of $245 a week from August 18, 1984 to November 9, 1984 for a total sum of $2,940. Plaintiff filed suit on June 17, 1985 alleging that he was still disabled both physically and mentally and was unable to return to work. Defendants filed an answer denying the allegations of the petition. After trial on the merits, the trial judge dismissed plaintiff's suit at his cost, holding that plaintiff had failed to meet the burden of proving the existence of any compensable injury related to the accident. The court of appeal affirmed, finding no manifest error in the trial court's finding that plaintiff was not disabled as a result of his work-related injury.[2] On plaintiff's application, we granted certiorari to review the correctness of that decision.[3]
In order to recover benefits under Louisiana Worker's Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. Disability is compensable only if it results from a work-related accident. La.R.S. 23:1031. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980); Parks v. Insurance Company of North America, 340 So.2d 276 (La.1976). The parties in this case stipulated that the fall was a work-related accident which arose out of and in the course of plaintiff's employment. As in other civil suits, the employee in a worker's compensation case has the burden of establishing by a preponderance of the evidence that he is disabled and that there is a causal relation with the employment accident. Walton v. Normandy Village Homes Association, 475 So.2d 320 (La. 1985). Additionally, reviewing courts must analyze claimed disability caused by mental conditions with utmost caution in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned. Reliford v. Fitzgerald Contractors, Inc., 401 So.2d 490 (La.App. 2nd Cir.1981).
Therefore, the issue before this court is whether plaintiff is temporarily totally disabled[4] and if so whether there is a causal relation to the work-related fall.
The record reveals that before the accident occurred, plaintiff lived with his wife and two children and had never had any physical injuries or mental problems.[5] After the accident, plaintiff moved in with his parents so they could take care of him. His parents have to bathe him, give him his medication, drive him to the doctor and prepare his meals. Plaintiff also developed a stutter after the accident which he had never had before.
In addition to the testimony of plaintiff and his father, plaintiff also offered the depositions of an orthopedic surgeon, a neurosurgeon and a psychiatrist in lieu of live testimony. Defendants called no witnesses and offered no documentary evidence on their behalf. The doctors stated that the x-rays, CT scans and cervical and lumbar myelograms revealed a minimal bulge at L4-L5 and L5-S1 and a 1.5mm bulging disc at C5-C6. Nevertheless, plaintiff complained of severe pain and abnormal sensation in all four extremities. Upon examination, plaintiff grimaced in pain and exhibited a shuffling, very slow gait. Plaintiff wore the soft cervical collar that had been given to him in August of 1984 but even when it was removed, his neck remained in a rigid, forward flex. Both the orthopedic surgeon and the neurosurgeon stated that the physical findings would not explain the magnitude of his complaints. They both felt that plaintiff should see a psychiatrist. Additionally, even though neither surgeon could explain plaintiff's complaints or actions, they did not think he was intentionally exaggerating *814 them nor did they think he was malingering.
Plaintiff was subsequently taken to a psychiatrist, Dr. Oliver Sanders, Jr., in December of 1984. Plaintiff saw Dr. Sanders over 20 times during the course of 1985 for individual psychotherapy. Dr. Sanders was deposed on November 26, 1985. His deposition revealed that plaintiff was suffering from post-traumatic stress disorder which he defined as follows:
It's a condition in which the patient has an experience outside of the usual range of the human experience....
Following this event which is called a stress aura the patient then has recurring images of the event like they keep thinking about it. The thoughts keep coming back into their mind. They relive the event. It's not like they used to remember it. They describe is [sic] as it's actually like they are there again. They relive it. They call it flashbacks. That's the way it's described in the literature.
He testified that plaintiff had told him that he could not get the accident out of his mind and that it is "in his mind all the time." Plaintiff also had trouble sleeping because he kept thinking about the accident. Dr. Sanders described plaintiff's appearance as "extremely anxious" and "almost rigid" and his face as being "like a mask." Plaintiff also exhibited memory difficulties as well as difficulties in communicating. Dr. Sanders concluded that plaintiff was "too anxious and too tense" to return to work. In fact, Dr. Sanders testified that as of November 26, 1985 (the date of the deposition), plaintiff was still not functioning well enough to even be able to enter group therapy, much less return to work. Dr. Sanders' final diagnosis was "acute traumatic stress disorder." When asked whether he was 100% sure of his diagnosis, he stated that he did not think any doctor could be 100% sure of a diagnosis but that he was 80 to 90% sure. He also stated that he did not think that plaintiff was malingering. Dr. Sanders was also convinced that the fall had caused plaintiff's mental problems. He stated:
He had no prior history of anything of this nature. This led me to believe that it was all probably brought about by the fall.
Additionally, plaintiff's symptoms of continually reliving the event were consistent with post-traumatic stress disorder. Dr. Sanders also testified that plaintiff's fall was an event that was certainly traumatic enough to produce the disorder. He felt that plaintiff was very lucky to have survived the fall at all. We find that Dr. Sanders' testimony clearly indicated that plaintiff was disabled by the post-traumatic stress disorder which was caused by the fall. Moreover, there was no testimony to the contrary.
We find that under the circumstances, plaintiff has proved by a preponderance of the evidence that he is temporarily totally disabled and that his disability was caused by the work-related fall. We conclude that the trial judge was clearly wrong in finding otherwise.[6] The court of appeal erred in affirming this finding.
Although plaintiff included a claim for penalties and attorney fees in his petition filed in the district court, this claim was not ruled on by the lower courts because both courts denied plaintiff's claim for disability benefits. Neither party briefed this issue in the court of appeal. Additionally, plaintiff did not raise this issue in his application to this court nor has it been briefed or argued by either party. We would consider it inappropriate and unfair to decide this issue without briefing and argument by the *815 parties. Therefore, we will remand this case to the court of appeal for briefing, argument, and an opinion on this issue.
Accordingly, we reverse the judgment of the court of appeal affirming the trial court's dismissal of plaintiff's claim for compensation and remand the case to the court of appeal to decide the issue of penalties and attorney fees, fix medical expenses, and thereafter to fashion a proper judgment in this case.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views expressed herein.
NOTES
[1] There was conflicting testimony as to whether plaintiff fell 10 feet and then tumbled down the stairs 25 feet, for a total of 35 feet, or whether he fell 35 feet and then tumbled down the stairs.
[2] 515 So.2d 509 (La.App. 1st Cir.1987).
[3] 517 So.2d 803 (La.1988).
[4] La.R.S. 23:1221(1).
[5] The doctors' depositions corroborated the testimony of plaintiff and his father that plaintiff had had no prior physical or mental problems.
[6] In his written reasons for judgment, the trial judge stated:

The testimony of the psychiatrist is inconclusive in that he indicates a stress disorder relating to a physical injury the diagnosis of which he defers to a neurosurgeon.
The trial judge was correct when he said that Dr. Sanders said he would have to defer to a neurosurgeon on the question of whether the plaintiff had any brain damage or brain injury. This, however, was a completely separate and independent injury from the post-traumatic stress disorder which Dr. Sanders clearly said was caused by the traumatic event which was the work-related fall. Accordingly, the trial judge was clearly wrong in finding that the psychiatrist's testimony was "inconclusive."