# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-108

**BEA ANGELLE**

**VERSUS**

**CITY OF KAPLAN-KAPLAN POLICE DEPARTMENT**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 04
PARISH OF LAFAYETTE, NO. 15-04691
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CANDYCE G. PERRET
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Theodore G. Edwards, IV**
**Jordan T. Precht**
**Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards, LLP**
**810 South Buchanan Street**
**Lafayette, LA 70502**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
 **Bea Angelle**

**Christopher R. Philipp**
**Attorney at Law**
**P. O. Box 2369**
**Lafayette, LA 70502**
**(337) 235-9478**
**COUNSEL FOR DEFENDANT-APPELLEE:**
 **City of Kaplan-Kaplan Police Department**

**PERRET, Judge.**

In this workers' compensation case, plaintiff/employee, Bea Angelle, appeals the judgment of the Workers' Compensation Judge ("WCJ") finding that she is not entitled to supplemental earnings benefits ("SEBs"). For the following reasons, we affirm.

**Facts and Procedural History:**

On November 3, 2011, Ms. Angelle was hired as a police officer by defendant/employer, the City of Kaplan Police Department ("City of Kaplan"). It is undisputed that on October 18, 2012, Ms. Angelle sustained a back injury while in the course and scope of her employment. Ms. Angelle testified that she strained her lower back while assisting a handicapped lady get back into her bed after having fallen in her home. Following the accident, the City of Kaplan accommodated Ms. Angelle by placing her in various positions of light-duty work until she stopped working on February 13, 2013. The City of Kaplan paid Ms. Angelle temporary total disability benefits ("TTDs") at the rate of $305.14 per week from the date of the accident until April 28, 2015; thereafter, Ms. Angelle's TTDs were converted to SEBs. On June 23, 2015, Ms. Angelle's SEBs were terminated based on her alleged earning capacity as established by Dawn Marroquin, a vocational rehabilitation consultant.

On July 28, 2015, Ms. Angelle filed a Disputed Claim for Compensation Form 1008 disputing the City of Kaplan's decision to terminate her SEBs. On August 5, 2015, the City of Kaplan filed an answer to the claim and requested a preliminary determination hearing. After a hearing was held on July 21, 2016, the WCJ made a preliminary determination that Ms. Angelle "is not entitled to Supplemental Earnings Benefits as of June 23, 2015." Ms. Angelle objected to the preliminary determination and requested a trial on the merits.

This matter was tried on March 9, 2017. At trial, the parties introduced as evidence the entire record of the July 21, 2016 preliminary hearing. Ms. Angelle provided additional testimony at trial explaining why she thought she was entitled to SEBs after June 23, 2015. At the end of the trial, the WCJ left the record open for the deposition of Dr. Michael Berard, Ms. Angelle's treating psychologist, to be taken. Dr. Berard was deposed on March 31, 2017, after which the parties were allowed twenty days to submit post-trial memoranda.

On May 19, 2017, the WCJ stated the following reasons for its denial of Ms. Angelle's request for SEBs:

> The Court finds, after review of the evidence, that the plaintiff is not entitled to supplemental earnings benefits. This is based on the medical information provided to the Court, specifically the opinions of Dr. Miller, Dr. Appley and Dr. Michael Berard. Dr. Miller has released Ms. Angelle to light-duty work with no heavy lifting or frequent bending. Dr. Appley's evidence provides that she is not a surgical candidate. The latest tests have been an EMG nerve conduction study, was read as normal. There is ample evidence that Ms. Angelle is capable of engaging in some type of employment. The basis for which Ms. Angelle has stated that she cannot engage in employment is the opinion of Dr. Michael Berard, a psychologist. Dr. Berard is a long-time medical provider to Ms. Angelle. She first saw him in 2010 and has continued to see him on an off-and-on basis since then. Her contention is that she has a mental injury caused by a physical injury, and therefore this allegation must be shown by clear and convincing evidence. The Court also notes that Dr. Berard finds that Ms. Angelle would not be able to work because of the degree of her mental injury. It is also important to note that Dr. Berard's medical records were entered into evidence and Dr. Berard's clinical diagnosis of Ms. Angelle's condition was done in accordance with the DSM IV, which is not the latest issue of the DSM. Therefore[,] this calls into question his opinion concerning her disability. The Court does not find that Ms. Angelle has shown a mental disability caused by physical injury. Therefore, the Court has determined that Ms. Angelle is capable of engaging in gainful employment and has not shown that supplemental earnings benefits are owed to her.

On June 16, 2017, the WCJ signed the judgment denying Ms. Angelle SEBs, and dismissed her claim with prejudice. Ms. Angelle now appeals this judgment. In her sole assignment of error, Ms. Angelle alleges that the WCJ ignored the

2

uncontradicted testimony of Dr. Berard finding that the October 18, 2012 accident caused her to have a psychological condition that prevented her from returning to work. Thus, Ms. Angelle argues that the record supports the continuation of her SEBs.

In response, the City of Kaplan argues that the WCJ correctly denied the continuation of SEBs because (1) Ms. Angelle was actively looking for work, (2) Dr. Roland Miller, her treating orthopedic surgeon, released her to perform light-duty work with no heavy lifting or frequent bending, (3) Dr. Stephen Staires, her pain management doctor, was no longer prescribing her pain medications, and (4) her EMG nerve condition study was normal. Further, the City of Kaplan alleges that it was unaware that Dr. Berard had been treating Ms. Angelle throughout the workers' compensation proceedings because Ms. Angelle chose to pay for the counseling sessions herself and had not sent any of the medical records to the City.

**Standard of Review:**

In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. La. Dep't of Corr.*, 93-1305 (La. 2/28/94), 633 So.2d 129. In applying this standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Stobart v. State*, *Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous. *Id.* Therefore, if the fact finder's "findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

**Discussion:**

Louisiana Revised Statutes 23:1021(8)(c) and (d) establishes the employee's burden of proof in cases where mental injury or illness develops subsequent to a physical work-related injury. Those provisions read as follows:

> **(c) Mental injury caused by physical injury**. A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.

> **(d)** No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.

Thus, in order to obtain compensation benefits for a mental injury caused by a physical injury, (1) Ms. Angelle must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.

The "'clear and convincing' standard is a heavier burden of proof than the usual civil case of 'preponderance of the evidence' standard but is less burdensome than the 'beyond a reasonable doubt' standard of a criminal prosecution." *Bundren v. Affiliated Nursing Homes, Inc.*, 94-808, p. 2 (La.App. 3 Cir. 2/1/95), 649 So.2d 1177, 1179. In order to "prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence." *Id.* Furthermore, this court "must analyze claimed disability caused by mental conditions with utmost caution in view of the

nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned." *Westley v. Land & Offshore*, 523 So.2d 812, 813 (La.1988).

Here, the record reflects that Ms. Angelle suffered from psychological problems both before and after the October 18, 2012 accident. In her April 5, 2016 deposition, Ms. Angelle testified that she began monthly psychological counseling sessions with Dr. Berard in January 2010. When asked whether workers' compensation paid for her medical treatment with Dr. Berard, Ms. Angelle responded: "No. I did not indicate that I was seeing Dr. Berard simply because I've been seeing him for a number of years, and at the time I had medical insurance." At trial, Ms. Angelle testified that she currently pays for her medical treatment with Dr. Berard, but that she qualified for Medicare as of January 2017. When asked how her work-related injury affected her psychological well-being, Ms. Angelle's testimony focused primarily on the emotional distress associated with her inability to secure a job, rather than a mental injury caused by the October 2012 accident. Specifically, Ms. Angelle testified that the process of finding a job was very difficult on her and made her feel as though she "wasn't necessary" and "wasn't needed." She testified that Dr. Berard prescribed Wellbutrin for her depression and to help her deal "with the daily issues of whatever my situation brings."

Regarding her physical injury, Ms. Angelle testified that both Dr. Miller and Dr. Staires released her to return to light-duty work with no lifting of more than twenty pounds. Although Ms. Angelle testified that she continues to suffer from "[c]hronic pain, generally going down both legs, but predominately in the left leg[,]" she has weaned herself off the narcotic pain medications in order to start the work rehabilitation process. She further testified that she began vocational

rehabilitation with Ms. Marroquin in February 2014, and that she continues to actively seek out employment opportunities.

Ms. Marroquin testified that she was hired in February 2014 to help Ms. Angelle return to work with the City of Kaplan or to find another job. She stated that she did an initial vocational interview with Ms. Angelle on March 19, 2014, and that she met with both Dr. Miller and Dr. Staires throughout the rehabilitation process to discuss job opportunities that suited Ms. Angelle's physical limitations. When asked whether she knew Ms. Angelle was being treated by Dr. Berard in relation to the October 18, 2012 injury, Ms. Marroquin responded that she did not have any notes or knowledge of Ms. Angelle receiving psychological treatment with Dr. Berard during the workers' compensation proceedings.

Ms. Shelton, an employee with Risk Management, testified that she handled Ms. Angelle's workers' compensation claim against the City of Kaplan. She testified that her decision to terminate Ms. Angelle's SEBs as of June 23, 2015 was based on Ms. Marroquin's vocational rehabilitation findings that Ms. Angelle could earn ninety percent or more of her average weekly wage. When asked whether she considered Dr. Berard's psychological treatment of Ms. Angelle or his opinion regarding her ability to return to work in making the decision to terminate benefits, Ms. Shelton responded that she did not have any medical records from Dr. Berard.

In his March 31, 2017 deposition, Dr. Berard testified that his treatment of Ms. Angelle began in the 1970s or 1980s while she was going through a divorce. Following the divorce, Dr. Berard testified that he treated Ms. Angelle in January 2010 because of "stressful conditions in response to an aging mother who needed continuous care and supervision; a husband who also was disabled and presented

6

with additional needs and care; orthopaedic symptoms correlated with a 2009 injury; and the overall stressors dealing with the combination of those variables."

Dr. Berard testified that he treated Ms. Angelle again in January 2013 for the "work-related injury that occurred in 2012, and the complications that she faced in coping with additional orthopaedic neurological symptoms." Specifically, Dr. Berard testified that Ms. Angelle "was faced once again with the construct of chronic pain[,] which alters sleep patterns, creates agitation, aggravation, the beginning of catastrophic ideation about her future, and the overall anxiety relative to her future with the department and her future in general." When asked how Ms. Angelle's treatment proceeded since 2013, Dr. Berard testified as follows:

> Well, the treatment in globo involving Dr. Miller and Dr. Staires, along with other physicians who were part of that journey in providing second and third medical opinions, is consistent with a gradual progression of psychiatric symptoms correlated with the complexity of the unresolved orthopaedic and neurological conditions. Therefore, the diagnostic impression that I've rendered and is part of the documents . . . include a gradual progression of diagnostic findings that lead to more complicated psychiatric entities; that is[,] she was initially diagnosed in 2013 with an adjustment disorder. In 2014[,] I shifted to a depressive disorder, NOS [not otherwise specified], all of which is connected to a pain disorder with related psychological features. And then with the administering of the additional inventories that provided more detail in depth of her psychiatric status, the diagnosis shifted to a major depression; a single episode without psychotic features. There was additional diagnosis of generalized anxiety disorder, and the third diagnosis, which has been consistent throughout reflects a pain disorder with related psychological factors.

Although Dr. Berard was aware that Ms. Angelle was receiving workers' compensation benefits and that her medical doctors approved her to return to light-duty work, he testified that he was not consulted by the work rehabilitation counselor on whether Ms. Angelle was fit from a psychological standpoint to perform gainful employment. Nonetheless, Dr. Berard testified that, in his opinion, Ms. Angelle's psychological diagnosis affects her ability to work and that her

escalated psychological difficulties are a result of the October 2012 injury. Specifically, Dr. Berard stated:

> So[,] in my opinion, based on experience and recent findings from imaging studies, it is absolutely essential that we evaluate the total person. And in doing so, when you incorporate that, she's also experiencing a disease of the brain correlated with chronic pain and the changes that occur in the brain and all the different nuclei, along with the fact that she has unresolved orthopaedic and neurological entities correlated with come element of pain, along with the psychiatric entities which is a major depression, all three diagnoses along with generalized anxiety disorder places her in a position of being totally, completely unreliable in fulfilling any part or full-time employment demands.

Dr. Berard further testified that on September 2, 2014, he diagnosed Ms. Angelle with major depressive disorder using the criteria established in the fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"). Although Dr. Berard acknowledged that the revised fifth edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") was released in 2015, he testified that his diagnosis of Ms. Angelle's condition in 2014 was rendered "in accordance with the actual up-to-date diagnostic manual that were [sic] accepted by the professionals" at that time.

Considering the heightened burden placed on a claimant seeking compensation benefits for a mental injury caused by a physical injury, we find that Ms. Angelle failed to prove by clear and convincing evidence that she suffered a mental injury caused by the October 18, 2012 work-related injury. Although Dr. Berard's medical records from 2010 through 2016 indicate that Ms. Angelle suffered from anxiety and depression before and after the work-related accident in 2012, Ms. Angelle ultimately chose to pay for her psychological counseling throughout these years and failed to share Dr. Berard's medical records with either the City of Kaplan, Ms. Marroquin, or Ms. Shelton. Moreover, we find that Dr. Berard could have easily testified in his deposition as to whether his diagnosis of

Ms. Angelle using the DSM-IV in 2014 would have stayed the same under the more current DSM-V that was being used at the time of trial.

Accordingly, we find no error in the WCJ's conclusion that Ms. Angelle failed to carry her burden of proving by clear and convincing evidence that she suffered a mental injury caused by the October 18, 2012 work-related injury. For the foregoing reasons, the WCJ's June 16, 2017 judgment that denied Ms. Angelle SEBs and dismissed her claim with prejudice, is affirmed. Costs of this appeal are assessed to Ms. Angelle.

**AFFIRMED.**