683 So.2d 706 (1996)
Harold J. CHARLES
v.
SOUTH CENTRAL INDUSTRIES.
No. 96-C-0883.
Supreme Court of Louisiana.
November 25, 1996.
*707 Mark Alfred Ackal, Ziegler, Ackal & Calogero, Lafayette, for Applicant.
Jarvis Jerome Claiborne, Opelousas, for Respondent.
WATSON, Justice.[1]
The issues are (1) whether this workers compensation claimant proved a mental injury or illness caused by a physical injury by clear and convincing evidence and (2) whether the employer was arbitrary and capricious for failing to pay medical expenses associated with the claimed mental injury or illness.

FACTS
Thirty-one year old Harold J. Charles worked as a welder for South Central Industries (SCI). He claimed he sustained head and back injuries when he fell off a raised platform while trying to change gas containers. After the unwitnessed accident on August 15, 1990, Charles was taken to the hospital and released.
Charles was subsequently treated by fourteen physicians, including five orthopedists, three neurologists, two physiatrics,[2] two psychologists, one general practitioner and one internist. Physical therapy and medication were prescribed for headache and lower back *708 pain. SCI terminated compensation benefits on August 20, 1992, based on a medical evaluation that Charles had reached maximum medical improvement, that Charles could resume full duty, medium-level work, and the belief by several physicians that Charles was a malingerer. Charles has not worked since the alleged accident.
Charles filed a claim seeking workers compensation disability benefits and further medical testing, as well as reimbursement for medical and transportation expenses, prescriptions, penalties and attorney fees. An independent medical exam was ordered by the Office of Workers Compensation.
The parties stipulated that Charles was an SCI employee acting within the course and scope of his employment at the time of the alleged injury. It was further stipulated Charles received weekly indemnity benefits from August 16, 1990 through August 20, 1992, the maximum rate of compensation and SCI's insured status. The medical records of all Charles' treating physicians were jointly admitted.
After trial, the hearing officer found the testimony and evidence established Charles' temporary total disability from August 15, 1990 through August 20, 1992. She decreed that Charles was entitled to payment of all medical bills from August 15, 1990, including mental and psychological medicals, medication and transportation expenses and a work-hardening program to assist him in re-entering the job market. She found the medical evidence overwhelmingly established that no physical disability now prevented Charles from returning to work.
From the medical evidence, the hearing officer found no psychological disability but a need for more intensive psychological evaluation and treatment. She determined that Charles' "psychological problems were a direct result of and connected to the original physical injury of August 15, 1990." OWC Reasons for Judgment, p. 3.
The hearing officer found SCI was not unreasonable in refusing to pay disability benefits and medical expenses for physical injuries after August 20, 1992, but its refusal to pay and authorize further psychological testing and treatment was arbitrary and capricious. Penalties of $2000 were assessed against SCI and attorney fees of $2000 were awarded to Charles. SCI appealed this judgment.
The appellate court reversed in part the hearing officer's judgment. The medical bills, medication expenses and transportation costs established at trial solely through the claimant's unsubstantiated testimony were deleted. In all other respects, the court of appeal affirmed the hearing officer's judgment. Charles v. South Cent. Industries, 95-746 (La.App. 3 Cir. 12/6/95), 667 So.2d 1129.
SCI sought a writ to this Court on the issues of whether Charles proved a compensable mental injury or illness and whether penalties and attorney fees were properly awarded for its failure to pay mental medical expenses. This Court granted a writ to review these issues. 96-0883, (La.6/21/96), 675 So.2d 1093.

LAW AND DISCUSSION
In order to recover benefits under Louisiana Workers Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A). Where a mental injury or illness develops secondary to a physical injury sustained in a work-related accident, an employee is entitled to compensation benefits for any disability resulting from the mental injury or illness and to reimbursement for mental treatment medical expenses. Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138, 143 (La.1989), Westley v. Land & Offshore, 523 So.2d 812, 814 (La.1988).
LSA-R.S. 23:1021(7)(c) and (d) provide:
(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee's body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.

*709 (d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Thus,
in order to obtain compensation benefits for a mental injury caused by a physical injury, (1) the claimant must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.
Howell v. Service Merchandise Co., Inc., 95-79, p. 5 (La.App. 3 Cir. 8/9/95), 663 So.2d 96, 99.
Although compensation laws are to be construed liberally in the claimant's favor, the worker's burden of proof is not relaxed. Harold v. La Belle Maison Apartments, 94-0889, p. 10 (La.10/17/94), 643 So.2d 752, 757; Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 279-280 (La.1993); Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). Disability can be proved by medical and lay testimony; the hearing officer's factual determination whether the worker has discharged his burden of proof should not be disturbed on review absent manifest error. Bailey, 620 So.2d at 280; Bruno, 593 So.2d at 361. "[R]eviewing courts must analyze claimed disability caused by mental conditions with utmost caution in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned." Westley, 523 So.2d at 813; see also Williams v. Regional Transit Authority, 546 So.2d 150, 158 (La.1989).
Charles was examined by two psychologists; Dr. Cole for SCI and Dr. Friedberg of his own choosing. Charles was referred to Dr. Cole, a clinical psychologist, for further psychological evaluation after a treating orthopedist noted gross exaggeration on all scales of a Multidimensional Pain Inventory. Charles was first examined by Dr. Cole on July 18, 1991. After giving a history and completing a few psychological tests, Charles stated he was not physically able to complete the testing. He returned the next day, but was incontinent and had to leave. Charles returned July 24 and completed several other tests. He again had to leave due to incontinence. He returned the following day and completed several other psychological tests.
Dr. Cole noted that Charles wore a cervical collar and back brace, and used a cane. He presented himself as a very weak and helpless individual, requiring his wife or someone else to assist him. Dr. Cole noted that, although he required his wife's assistance to stand when she was present, Charles had no difficulty standing by himself when left alone. Dr. Cole remarked that the claimant did not request assistance or ask to be taken to the restroom during either of his incontinent episodes in the office. When testing began, Charles exhibited extreme pain behavior but shifted to no pain behavior midway. He then returned to some pain behavior for the last part of the intelligence testing. On some tests, Charles appeared very labored but was quick and skillful on other tests. He exhibited no pain behavior as he bent his neck forward to work on a block design test; at other times he would stand holding his neck in a stiff position. He became motivated to terminate the test toward the end and seemed to work more quickly.
Dr. Cole found that Charles had marked inconsistencies throughout the evaluation both in his physical demeanor and his psychological responses. After a thorough evaluation of the test results and observing Charles, Dr. Cole concluded that Charles was malingering. He recommended no further organic intervention be undertaken since it would only add to the chronic problem.
Charles was referred to Dr. Friedberg, a clinical psychologist, by Dr. Hodges, a physiatrist of Charles's choosing. Dr. Friedberg initiated psychological testing November 26, 1991, but Charles was unable to do even the *710 most simple tasks. Dr. Friedberg found this gross low level of performance appeared in great contrast to Charles' general verbal abilities, his reaction times and his general mental status. The result of one test showed Charles was either suffering from a gross organic disorder or was malingering. Since it was obvious from all other areas of functioning that Charles was not grossly demented, Dr. Friedberg administered a test designed to verify malingering. Charles' performance suggested that particular phenomena was present and testing was terminated. Dr. Friedberg concluded:
In summary, there is little doubt that Mr. Charles is not putting out a conscious positive effort in psychological examination. I, of course, cannot make any statement about the existence or non-existence of some orthopedic injury, but there is little doubt that he is placing a conscious effort to maximize his psychological impairment. If an MRI and CT scan fail to show any major areas of dysfunction, then I would feel extremely confident to state that Mr. Charles is malingering his symptoms. It may well be that he does have headaches, as well as back pain from his accident, but there is a gross exaggeration of symptoms.
Joint Exhibit, # 8. All physical tests, including an MRI and CT scan, have been normal.
Charles testified he is not a malingerer but failed to present any psychiatric or psychological testimony to substantiate his claim of mental injury or illness. See Augustine v. Paul Wall Truck Line, Inc., 603 So.2d 770 (La.App. 3 Cir.), writ denied, 608 So.2d 193 (La.1992). Several of the treating physicians in other specialties (including the OWC's independent medical expert) believed Charles was malingering; others suggested further psychiatric or psychological testing as a possible treatment. These other physicians do not have specialties in psychiatry or psychology as required by the statute; therefore, their recommendations are not relevant to establishing by clear and convincing evidence Charles' claimed mental injury. Further, Charles was psychologically evaluated by two clinical psychologists who concluded Charles was malingering and who found further psychological treatment unnecessary. Compare Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138 (La.1989)(psychiatrist testimony supported presence of mental injury); Westley v. Land & Offshore, 523 So.2d 812 (La.1988) (same); Lannes v. Jefferson Door Company, 94-1 (La.App. 5 Cir. 5/11/94), 638 So.2d 250 (same).
Charles failed to prove by clear and convincing evidence that his work-related physical injury caused a mental injury under LSA-R.S. 23:1021(7)(c) and (d). The hearing officer's contrary conclusion, affirmed by the appellate court, was manifestly erroneous and must be reversed. Since claimant failed to prove entitlement to compensation for a mental injury, his employer was not arbitrary and capricious in refusing to pay medical expenses associated with the claimed mental injury or illness. The hearing officer's award of penalties and attorney fees is reversed.

CONCLUSION
Charles failed to prove by clear and convincing evidence entitlement to compensation benefits for a mental injury caused by a work-related physical injury. The hearing officer's contrary conclusion, affirmed by the appellate court, was manifestly erroneous and is reversed. The hearing officer's conclusion that Charles' employer was arbitrary and capricious for failure to pay medical expenses associated with the claimed mental injury was also clearly wrong. The hearing officer's award of penalties and attorneys fees, affirmed by the appellate court, is also reversed.
AWARD OF MENTAL MEDICAL EXPENSES, PENALTIES AND ATTORNEYS FEES REVERSED.
NOTES
[1] Calogero, C.J., recused.
[2] Physiatry is the medical specialty for the treatment of disease and injury by physical agents, as exercise, manipulation or heat therapy. See Random House Webster's College Dictionary 1019 (1995).