714 So.2d 218 (1998)
Louis ROSS
v.
REMEDIATION SERVICES OF LOUISIANA, et al.
No. 97 CA 2102.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*219 Arthur Cobb, Michelle Sorrells, Baton Rouge, for Plaintiff/Appellant Louis Ross.
Patrick F. Robinson, Baton Rouge, for Defendants/Appellees Remediation Services of Louisiana et al.
Before GONZALES, PARRO and GUIDRY, JJ.
GONZALES, Judge.
In this appeal, Louis Ross, the claimant, challenges a judgment dismissing his claim for workers' compensation benefits against his employer, Remediation Services of Louisiana, Inc. (RSL), and its insurer, Louisiana Workers' Compensation Corporation (LWCC) (the defendants). The workers' compensation judge concluded that Mr. Ross failed to prove his entitlement to continuing benefits after payments were discontinued by the defendants.

FACTS AND PROCEDURAL HISTORY
On March 15, 1994, Mr. Ross received an electrical shock from a piece of equipment while at work. He was taken to Employer's Medical Clinic in Baton Rouge, Louisiana, with complaints of pain in his right arm and tightness in his chest. He was subsequently treated at Our Lady of the Lake Regional Medical Center emergency room, but was discharged on the same day with no obvious abnormalities detected.
Mr. Ross alleges that after being shocked, he began to hear voices in his head, one of which he identifies as "Mr. Charlie." Although he has never seen Mr. Charlie, Mr. Ross claims that Mr. Charlie encourages him to commit destructive and harmful acts to objects and other persons.
Mr. Ross was paid workers' compensation benefits from March 16, 1994 through July 21, 1994. On August 25, 1994, Mr. Ross filed a disputed claim for compensation, seeking additional benefits. A trial was held before the workers' compensation judge on May 1, 1997, and on May 16, 1997, she signed a judgment dismissing Mr. Ross's claims with prejudice.
Mr. Ross appeals from this adverse judgment, asserting the following assignments of error:
1. The workers' compensation judge manifestly erred in her determination that he did not prove by clear and convincing evidence that he sustained a mental injury from a physical injury, pursuant to La.R.S. 23:1021(7)(c).
2. The workers' compensation judge manifestly erred in considering the report from Dr. Robert Blanche because he failed to meet the requirements of La.R.S. 23:1317.1.

DR. BLANCHE'S IME REPORT
In his second assignment of error, Mr. Ross challenges the report submitted by an independent medical examiner (IME) who evaluated him. According to Mr. Ross, Dr. Robert Blanche's report should not have *220 been considered by the workers' compensation judge because Dr. Blanche failed to (1) include a copy of his curriculum vitae with his report, (2) attach a written certification authenticating his report, and (3) timely submit the report within 30 days after performing the independent medical examination, as is required by La. R.S. 23:1317.1.[1]
In essence, Mr. Ross's challenge to Dr. Blanche's report is that it lacks authenticity. The requirement that evidence be authentic is a rule of evidence found in Article 901[2] of the Louisiana Code of Evidence. Although all findings of fact must be based on competent evidence, the workers' compensation judge is not bound by technical rules of evidence or procedure, other than as provided in the Louisiana Workers' Compensation Law. La. R.S. 23:1317(A). However, if the authenticity requirement of La. C.E. art. 901 were applicable to this case, all of the rules of evidence would apply, including the contemporaneous objection requirement contained in La. C.E. art. 103(A)(1).[3] Because the record indicates that Mr. Ross made no objection when Dr. Blanche's report was filed into evidence, we conclude that, if the rules of evidence were applicable, Mr. Ross waived his right to object to the report's authenticity. See Broussard v. West-Cal Construction Company, Inc., 96-18 (La.App. 3d Cir. 6/12/96), 676 So.2d 743, 745-746; Schmitt v. City of New Orleans, 632 So.2d 367, 370 (La.App. 4th Cir.1993). This assignment of error is without merit.

MENTAL INJURY CAUSED BY A PHYSICAL INJURY
In his first assignment of error, Mr. Ross contends that the workers' compensation judge manifestly erred in concluding that he failed to carry his burden of proving that he suffered a mental injury caused by a physical injury, entitling him to continuing benefits.[4]
In order to recover benefits under the Louisiana Workers' Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course and scope of his employment. La. R.S. 23:1031(A). Where a mental injury or illness develops secondary to a physical injury sustained in a work-related accident, an employee is entitled to compensation benefits for any disability resulting from the mental injury or illness and to reimbursement for mental treatment medical expenses. *221 Charles v. South Central Industries, 96-0883 (La.11/25/96), 683 So.2d 706, 708.
In order to obtain compensation benefits for a mental injury caused by a physical injury, (1) the claimant must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders. La. R.S. 23:1021(7)(c), (d); Charles v. South Central Industries, 683 So.2d at 709. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Renter v. Willis-Knighton Medical Center, 28,589 (La.App. 2nd Cir. 8/23/96), 679 So.2d 603, 607.
The compensation statutes are to be liberally construed in order to afford coverage. Harold v. La Belle Maison Apartments, 94-0889 (La.10/17/94), 643 So.2d 752, 757. Nevertheless, the claimant's burden of proving his injury is not relaxed. Moore v. Popeye's Fried Chicken, 96-1889 (La.App. 1st Cir. 6/20/97), 697 So.2d 5, 9. In deciding whether a claimant in a workers' compensation action has proven his claimed disability, the totality of the evidence, medical and lay, must be considered. Bass v. National Maintenance Corporation, 95-0367 (La.App. 1st Cir. 12/15/95), 665 So.2d 782, 786. The workers' compensation judge's factual determination as to whether the claimant has discharged his burden of proof should not be disturbed on review absent manifest error. Charles v. South Central Industries, 683 So.2d at 709. Reviewing courts must analyze claimed disability caused by mental conditions with utmost caution, in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned. Williams v. Regional Transit Authority, 546 So.2d 150, 158 (La.1989).
Mr. Ross was evaluated by Cary D. Rostow, a clinical psychologist, over a course of three visits in December of 1995. With regard to auditory hallucinations, Mr. Ross related to Dr. Rostow that, on numerous occasions since the March 15, 1994 accident, Mr. Charlie had instructed him to do harm to others and/or himself, such as hitting his dog, shooting his former attorney, shooting himself, and getting out of a taxi while the vehicle was moving. Mr. Ross also reported that he heard other voices, which did not speak clearly to him, but would scream, laugh and mumble. According to Mr. Ross, he did not hear voices before the accident in March of 1994. Dr. Rostow performed a series of psychological tests on Mr. Ross and concluded that he was mildly mentally retarded with a mental age of 8-10 years, suffered from post-traumatic stress disorder related to the electrical shock, and was deficient in orientation, attention, recall, and language at the most basic levels. According to Dr. Rostow, Mr. Ross showed neuropsychological impairment which "may be" related to the electrical shock in March of 1994.
Mr. Ross was also evaluated by Dr. Louis Cenac, a psychiatrist, over numerous visits between December of 1995 and February of 1996. In a March 13, 1996 letter addressed to Mr. Ross's attorney, Dr. Cenac reported that Mr. Ross's primary complaint was, "Sometimes I be crying sometime." Dr. Cenac noted Mr. Ross's auditory hallucinations, wherein Mr. Ross reported that Mr. Charlie directed him to commit negative acts, such as smoking marijuana and hitting his dog. According to Dr. Cenac's letter, Mr. Ross's relatives first observed the existence of the hallucinations after the electrical injury. Dr. Cenac opined that Mr. Ross suffered from post-traumatic stress disorder associated with the electrical shock, and that certain psychiatric symptoms exhibited by Mr. Ross, such as painful dreams, startle response, sleep disturbance, anxiety, and sad moods, were directly attributable to the emotional response to his electrical injury. Dr. Cenac stated that, before his accident, Mr. Ross was capable of some degree of independent functioning, even though he was "clearly limited intellectually." According to Dr. Cenac, after the electrical shock, Mr. Ross developed "significant psychiatric symptomatology" which caused a marked regression in his ability to function. In his letter, Dr. Cenac *222 wrote that "[w]ith reasonable medical certainty[,] the cause of [Mr. Ross's regression] was the electrocution which occurred at his work site in March of 1994."
The defendants chose to have Mr. Ross examined by a second psychiatrist, Dr. Henry Olivier, who saw Mr. Ross during one visit on March 6, 1996. Mr. Ross told Dr. Olivier that he hears his deceased sister's voice telling him not to listen to other voices and "to do right." Mr. Ross was unable to accurately convey background information to Dr. Olivier, who noted that Mr. Ross had no concept of time or space, and was very confused about lengths of time and/or sequences of events. Dr. Olivier considered the history provided by Mr. Ross to be very unreliable. Further, Mr. Ross could not tell Dr. Olivier the date of his injury, was unable to name the current date, month, or year, and could not name the current president, governor, or states bordering Louisiana. He could not count past 20 nor complete a recitation of the alphabet. Dr. Olivier opined that Mr. Ross was severely mentally retarded, exhibited mildly psychotic features, and was incapable of logical thought patterns. However, Dr. Olivier did not believe that Mr. Ross suddenly started to hallucinate following his accident; nor did he believe that the electrical shock caused any demonstrable physical problem. Dr. Oliver recommended that Mr. Ross undergo more neuropsychological testing and that he obtain counseling, medication, and governmental assistance for persons with developmental disabilities.
Based on the conflicting findings of Drs. Cenac and Olivier, the defendants filed a motion to have the workers' compensation judge appoint an independent medical examiner in the field of psychiatry to evaluate Mr. Ross. The workers' compensation judge appointed Dr. Robert Blanche, a psychiatrist, who saw Mr. Ross three times in May and June of 1996, and who reviewed all previous medical reports regarding Mr. Ross's condition, as well as depositions related to the case.
Mr. Ross's complaints to Dr. Blanche included auditory hallucinations, headaches, a backache, unhappiness, loss of sexual interest and function, hopelessness, insomnia, and apparent inability to function. Dr. Blanche characterized Mr. Ross as "simple minded" based on his verbal skills and educational history. Dr. Blanche noted that Mr. Ross was able to provide very specific historical details about some aspects of his life, but that other details were sketchy or vague. Mr. Ross appeared to be profoundly depressed and exhibited dramatic mental behavior, including tense posture, grimaces, clutching his head, shaking his legs, mumbling, and apparent visual and auditory hallucinations. In his IME report, Dr. Blanche expressed the opinion that Mr. Ross was probably mildly mentally retarded, but was not disabled because of psychological reasons, and was malingering for financial gain. Dr. Blanche stated that Mr. Ross's clinical history and mental status presentation was dramatic and inconsistent with post-traumatic stress disorder. Dr. Blanche believed that Mr. Ross was trying to present himself as "crazy" and that his manner could be convincing and frightening to almost anyone. Dr. Blanche also noted that Mr. Ross's "selective" memory was compatible with a pattern of malingering.
Mr. Ross was the sole witness who testified at the trial. He gave a history of his employment background and described how the accident at work occurred. He testified that Mr. Charlie still talks to him and tells him to hurt people and commit destructive acts. He stated that he never heard Mr. Charlie's voice prior to his electrical shock. At the time of trial, Mr. Ross was working in a maintenance position at a shopping center, taking the bus to get to work, taking medication twice daily, and receiving assistance from a public mental health facility.
At the conclusion of the trial, the workers' compensation judge determined that Mr. Ross failed to carry his burden of proving a mental injury caused by his accident-related physical injury by clear and convincing evidence. She noted several discrepancies in Mr. Ross's testimony, which leads this court to presume that she found him less than credible. She also concluded that Dr. Blanche most accurately assessed Mr. Ross's mental condition and gave reasons for discounting the opinions of Dr. Rostow and Dr. *223 Cenac, both of whom found that Mr. Ross suffered from a post-traumatic stress disorder related to his electrical shock.
It is well established that the trier of fact has considerable discretion in accepting or rejecting expert testimony, and that the workers' compensation judge's decision to accept the testimony of one expert over another should not be disturbed absent manifest error. Williams v. Regional Transit Authority, 546 So.2d at 157. Mr. Ross argues that the workers' compensation judge should have given more weight to the opinions of Drs. Rostow and Cenac because they were Mr. Ross's treating physicians. We are aware of the general jurisprudential rule that a treating physician's opinion is given more weight than a non-treating physician. However, the trier of fact is not bound to accept the testimony of an expert whose testimony is presumptively given more weight if he finds the opinion is less credible than that of other experts. Fontenette v. McDermott, Inc., 95-0190 (La.App. 1st Cir. 10/6/95), 694 So.2d 266, 270. Further, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Morris v. Norco Construction Company, 632 So.2d 332, 335 (La.App. 1st Cir.1993), writ denied, 94-0591 (La.4/22/94), 637 So.2d 163.
In this case, Drs. Rostow and Cenac's conclusions varied greatly from the conclusions reached by Drs. Blanche and Olivier. All four practitioners were qualified in their respective fields to give an opinion as to whether Mr. Ross suffered a mental injury related to his electrical shock. Based on the record as a whole, we see no manifest error in the workers' compensation judge's determination that the medical evidence did not support a finding of a compensable mental injury.[5]
There is further support for the workers' compensation judge's determination that Mr. Ross failed to carry his burden of proof. She noted that Mr. Ross was receiving much financial and emotional support from family members, friends, and church members, but she found it "very revealing" that not one of these persons was present at the trial to testify regarding Mr. Ross's lack of mental problems prior to his electrical shock.[6] She correctly noted that it was Mr. Ross's burden to demonstrate the causal connection between the accident and his alleged mental condition. See La. R.S. 23:1021(7)(c).
In light of the heightened burden placed on a claimant seeking compensation benefits for a mental injury caused by a physical injury, and with due regard to the deference owed by this court to the workers' compensation judge's factual determinations and assessments of credibility, we find no error in the workers' compensation judge's conclusion that Mr. Ross failed to carry his burden of proving by clear and convincing evidence that he suffered a mental injury caused by a work-related physical injury.

DECREE
For the foregoing reasons, the workers' compensation judge's May 16, 1997 judgment, dismissing Mr. Ross's claims against the defendants, Remediation Services of Louisiana, Inc. and Louisiana Workers' Compensation Corporation, is AFFIRMED. Costs of this appeal are assessed to Mr. Ross.
NOTES
[1] Louisiana Revised Statute 23:1317.1 provides, in pertinent part, as follows:

B. An examiner performing independent exams pursuant to R.S. 23:1123 shall be required to prepare and send to the office a certified report of the examination within thirty days after its occurrence.
C. The report of the examination shall contain the following, when applicable:
(1) A statement of the medical and legal issues the examiner was asked to address.
(2) A detailed summary of the basis of the examiner's opinion, including but not limited to a listing of reports or documents reviewed in formulating that opinion.
(3) The medical treatment and physical rehabilitative procedures which have already been rendered and the treatment, if any, which the examiner recommends for the future, together with reasons for the recommendation.
(4) Any other conclusions required by the scope of the independent medical examination, together with reasons for the conclusion reached.
(5) A curriculum vitae of the examiner.
(6) A written certification personally signed by the examiner that the report is true. The substance of the certification shall be: "I certify that I have caused this report to be prepared, I have examined it, and to the best of my knowledge and belief, all statements contained herein are true, accurate, and complete."
[2] Louisiana Code of Evidence article 901 provides, in pertinent part, as follows:

A. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
[3] Louisiana Code of Evidence article 103(A)(1) provides:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and... [w]hen the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection[.]
[4] The workers' compensation judge also concluded that Mr. Ross had no physical disability after July 21, 1994, the date when the defendants discontinued compensation payments. Ross did not appeal this determination.
[5] We further note that, although post-traumatic stress disorder has been recognized as a medically verifiable mental disorder for which compensation has been awarded, see Williams v. Regional Transit Authority, 546 So.2d at 158, n. 4, there is no evidence in the record which establishes that this diagnosis by Mr. Ross's treating physicians meets the most current criteria established by the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, as is required by La.R.S. 23:1021(7)(d).
[6] In his March 13, 1996 letter, Dr. Cenac discussed a telephone conversation he had with Mr. Ross's sister, Eva May Payne. According to Dr. Cenac, Ms. Payne "noticed a significant decline in [Mr. Ross's] functioning after the electrocution." The workers' compensation judge correctly noted that any information from Ms. Payne included in Dr. Cenac's letter was "blatant hearsay" and not competent evidence upon which to determine a causal connection between the electrical shock and Mr. Ross's alleged mental injury.