[¡¡SOL GOTHARD, Judge.
Claimant, James Arwood, appeals a decision of the Office of Workers’ Compensation which denied his claim for benefits after a determination that he forfeited any and all benefits by violation of LSA-R.S. 23:1208, and failed to meet his burden of proof that his injury was causally related to a work-related accident. For reasons that follow, we affirm.
James Arwood injured his back in the course and scope of his employment in April, 1993 when he lifted a manhole cover. He underwent two surgeries as a result of the injury and was treated by orthopaedist, Dr. Bernie Manale. Although the claim was originally disputed by his employer, that matter was ultimately resolved. Claimant has received benefits for the physical injuries he received in the accident.
*527 |3 Subsequently, new issues relating to a claim that a mental injury also resulted from the accident arose. Claimant maintained that he was undergoing psychotherapy for depression and chronic pain as a result of the back injury and made a claim for those injuries. He asserted that he was referred to Dr. Gerald Murphy for treatment of his mental condition by his orthopaedist, Dr. Manale. Initially, Dr. Murphy’s bills were paid by the employer. However, when it was discovered that Dr. Murphy has a Ph.D. in social work, the employer stopped paying benefits citing LSA-R.S.23:1021(7)(d). Claimant did not dispute the withdrawal of the authorization to pay Dr. Murphy; but, he argues the bills up to the date of the withdrawal should be paid.
The matter went to trial on the issues of whether the claimant’s mental condition was causally related to the accident, and if so, should Dr. Murphy’s bills be paid as a benefit of workers’ compensation. After a trial on the merits, the trial court found that the claimant did not meet his burden of proof that the condition was causally related to the compensable back injury, and further, that claimant made misrepresentations sufficient to forfeit any right he may have had to benefits. Claimant appeals.
At trial, the parties stipulated to the physical injuries and the surgeries. The stipulations also establish that the claimant was an employee of the defendant in April of 1993 when he had the accident in the course and scope of his employment. At the time his wage rate was $7.00 per hour and his compensation rate is $182.00. The parties also stipulated that defendant is current in payment of compensation. Thus, the physical injuries are not at issue in this appeal. The only issue tried by the court was whether claimant was entitled to compensation for psychotherapy.
|4 Claimant testified that he began drinking alcohol at age 11, and has abused drugs and alcohol throughout his life. He testified that before his marriage in 1984, he “tried everything except heroin”. He worked on the river, seven days on and seven days off. On his time off he would “do his thing”. He stated that he “quit everything” after his marriage, but continued to drink alcohol and smoke marijuana occasionally on weekends. He admitted he drank after work and on weekends on a regular basis. For about seven or eight years before the accident he drank as much as a case of beer a day. He testified that he quit drinking about five months before the accident in 1993, but resumed drinking about a week after the accident. He stated that he began seeing Dr. Murphy in July, 1995 and maintains that he has again stopped drinking as a result of his treatment with Dr. Murphy. However, he admitted that he still uses marijuana occasionally “when the weather gets bad”. He explained that changes in the weather cause his back to hurt and the marijuana is a pain reliever. He also has a problem with abuse of the medication prescribed after the accident. His wife is now administering the medication to avoid the problem.
Mr. Arwood testified that he still suffers from back pain and can no longer sleep on his back. He has nightmares and memories of the second surgery causes sleeplessness. He testified that prior to the accident he had nightmares, but did not wake up due to pain. He offered additional testimony about the loss of quality of life since his back surgery.
He maintains that since the accident his relationship with his wife has been strained because he is “mad most of the time”. He also stated that he considers himself a “nervous” person, prone to nightmares and fears. He has been “nervous” for about ten years. He admitted to arrests for marijuana when he was |5a teenager. Later arrests included fighting and DWI. He also stated that he has been shot, although he could not remember when.
Claimant admitted to having many girlfriends who give him massages, but he denies having a sexual relationship with anyone other than his wife. He also stated that any reference to extra-marital sex in his doctor’s notes has “got to be a misunderstanding big time”.
Dr. Gerald Murphy, who holds a degree of doctor in clinical social work from Tulane University, testified that Mr. Arwood was referred to him by Dr. Bernie Manale. Dr. *528 Manale requested that Dr. Murphy see Mr. Arwood on an emergency basis because Dr. Manale felt that Mr. Arwood was physically abusive to his wife and was “dangerous”. Mr. Arwood was drinking excessively and Mrs. Arwood was fearful for the safety of herself and her children.
Dr. Murphy described Mr. Arwood as a man with a chronic and pervasive prior chemical dependency problem. He has a very low threshold for pain tolerance and is using prescription drugs and alcohol to self-medicate. Dr. Murphy testified that the accident exacerbated Mr. Arwood’s chemical dependency problem, and he had relied on old behavior patterns. Although Mr. Arwood has controlled his drinking, he still has a problem with medication. His wife is assisting in addressing that problem. Dr. Murphy’s diagnosis is long standing profile of depression and anxiety which has been exacerbated by the back injury. Mr. Arwood is psychologically very fragile with a tenuous hold on reality. He has poor coping skills, a high anxiety level and can be irrational. Dr. Murphy opined that Mr. Arwood is not a malingerer. He needs further treatment to cease chemical abuse, and to develop better coping, pain management and communication skills.
le Dr. Edward Shwery, a clinical psychologist who is board certified in pain management, testified that he first saw Mr. Arwood on April 28, 1997. At that time he took a brief history from the patient regarding the treatment he was receiving from Dr. Manale and Dr. Murphy. Dr. Shwery saw Mr. Ar-wood approximately five more times. During his evaluation of Mr. Arwood, Dr. Shwery interviewed Mrs. Arwood, administered a battery of psychological tests, conducted a pain assessment and consulted with Dr. Ma-nale. Dr. Shwery concluded that Mr. Ar-wood has had chronic pain since the accident in 1993. He is depressed and angry, and has difficulty sleeping. He was drinking heavily and self-medicating. Dr. Shwery opined that the treatment with Dr. Murphy has been beneficial. Although there is no indication of psychosis, there is a lot of psychotic-like thinking which appeared on the testing. Dr. Shwery concluded that when Mr. Arwood is under stress and depression, his thought processes are disrupted, and he has cognitive confusion. Dr. Shwery found that Mr. Ar-wood was functioning on an intellectual level below that of an eighth-grader, and that low level of intelligence impedes his progress in developing pain management skills.
Dr. Shwery testified that the results of the diagnostic tests revealed that Mr. Arwood had high levels of depression, anxiety and especially high levels of peculiarities in his thinking. His ability to think is clearly impaired. The tests also indicated that his back pain is real. He was dysfunctional in his level of pain management, but has made some improvement. Before the accident, he was functioning, although he had significant problems. Now his psychological impairments make him unable to work. Dr. Shwery explained that Mr. Arwood is psychologically disabled because he is unable to concentrate. The ^concentration problems stem from his internal psychological problems and the level of distress. He alternates from periods of distress to confusion and “zombie like staring”. Further, his depression affects his ability to interact with others. Dr. Shwery did not believe Mr. Arwood was a malingerer.
On cross-examination, Dr. Shwery admitted that one who drinks and abuses drugs as much as Mr. Arwood would probably exhibit symptoms of depression. Dr. Shwery explained that alcoholics have other problems in their lives which cause depression or turmoil, and these people turn to alcohol to alleviate their problems. Dr. Shwery also stated that Mr. Arwood discussed his nightmares. Mr. Arwood indicated that the nightmares began several years prior to the accident. They would occur two or three times a week and involved bad things happening to family members or friends concerning death and funerals. Dr. Shwery stated that the nightmares are a symptom of anxiety, distress or stress. Mr. Arwood’s periods of anxiety and distress have been features of his personality for a long time and preceded the accident.
Dr. Shwery also testified that the results of Mr. Arwood’s personality tests revealed a high level of peculiarities in thinking, which *529 indicate schizophrenia or psychosis. However, after comprehensively evaluating all of the test scores, Dr. Shwery ruled out schizophrenia. It is Mr. Arwood’s “crazy thoughts” which elevate the scale. It is not possible to tell from the tests how long Mr. Arwood has had these thoughts. However, Dr. Shwery testified that the accident and subsequent pain could have precipitated the problem because now Mr. Arwood no longer has the outlet of work to relieve stress.
Mrs. Arwood testified that her husband drank and smoked marijuana during the course of their marriage, but he stopped drinking around Christmas, [§1992 because there was no money for gifts for the children. Mrs. Arwood explained that Mr. Arwood would spend all of the family’s extra money on alcohol. After the accident, he began to drink every day again.
Mrs. Arwood described her husband’s severe drinking problem. He would come home from work every day about five o’clock and drink until about ten. On weekends he began drinking about ten or eleven o’clock in the morning and drink an entire case of beer a day. She stated that his marijuana use did not bother her. She threatened to leave him and take the children when she had no money for Christmas presents in December, 1992. That is when Mr. Arwood stopped drinking.
He began drinking again after the accident, but stopped again in July, 1995, except for one incident. His marijuana use remained constant before and after the accident. After the back surgeries he began to abuse prescription medication. However, Mrs. Arwood began monitoring his prescribed medication, and the abuse has stopped in the last six months. Mrs. Arwood stated that despite her husband’s drinking, the family relationship was better before the accident.
The record also contains a deposition from Dr. Thomas Hannie, Jr., a clinical psychologist who has twenty years experience in treating chronic pain patients. He testified that he conducted a psychological pain evaluation on Mr. Arwood in which he administered a battery of tests. He also reviewed Mr. Arwood’s entire medical history. During his evaluation, Dr. Hannie also conducted a personal interview with Mr. Arwood.
Dr. Hannie found that Mr. Arwood’s basic personality is dominated by antisocial characteristics, strong hostility toward authority, conflicts in school and|9also with bosses. He has been an alcoholic and drug abuser since childhood. Dr. Hannie also opined that Mr. Arwood is not truthful and is a malingerer. Further, Mr. Arwood admitted to defrauding the workers’ compensation system by not informing his employer about various jobs he held while receiving benefits. Dr. Hannie testified that the discrepancy between psychological symptoms and objective findings is clearly present in the form of the psychometric measures, which clearly indicates an exaggeration of emotional problems. Dr. Han-nie also reviewed the test scores obtained by Dr. Shwery and disagreed with Dr. Shwery that the results showed no malingering. Dr. Hannie testified that the heightened scores on the Shwery test showed severe psychopathology, possible symptom exaggeration, and a high probability of malingering.
According the notes Dr. Hannie took during the personal interview, Mr. Arwood stated that he began drinking at age eleven and continued to drink all of his life. He would begin drinking before he brushed his teeth in the morning and get ready for work by icing down his beer. He kept the beer in his truck while he was at work. He would consume at least a case of beer a day. At first Mr. Arwood denied drinking on the day of the accident, saying he had stopped drinking about five months before the accident. However, later in the conversation he told Dr. Hannie that he started drinking again about two weeks before the accident. Because it was cold, he would have coffee in the morning and then start drinking beer at lunch. He explained to Dr. Hannie that because the accident happened at 10:30 in the morning, he had not yet had any beer that day. Dr. Hannie testified that Mr. Arwood seemed proud of the fact that he could drink on the job and still get his work done.
j10 Dr. Hannie further testified that Mr. Arwood stated that he had sexual difficulties with his wife since the accident because of the pain. However, Mr. Arwood admitted to having an extra-marital affair in which he was not experiencing these problems.
*530 Mr. Arwood discussed his work possibilities with Dr. Hannie. Mr. Arwood said that he tried painting, but was unable to stand the pain. He stated that he was doing some automobile mechanic work at home, with his wife’s help, but was concerned that he would lose his workers’ compensation benefits if that information came to light.
Our workers’ compensation law provides for benefits where a mental injury or illness develops secondary to a physical injury sustained in a work-related accident. Sparks v. Tulane Med. Ctr. Hosp. & Clinic, 546 So.2d 138, 143 (La.1989). Since Sparks was decided, the legislature has enacted LSA-R.S. 23:1021(7)(c),(d) which provides:
A mental injury or illness caused by a physical injury to the employee’s body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
No mental injury or illness shall be com-pensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Thus, in order to prevail, claimant must prove by clear and convincing evidence that the physical injury caused the mental injury. Further, the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and the diagnosis must | nmeet the most current criteria established by the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders. Charles v. South Central Industries, 96-0883 (La.11/25/96), 683 So.2d 706, 709. As further explained by the Charles court:
Although compensation laws are to be construed liberally in the claimant’s favor, the worker’s burden of proof is not relaxed. Harold v. La Belle Maison Apartments, 94-0889, p. 10 (La.10/17/94), 643 So.2d 752, 757; Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 279-280 (La.1993); Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992). Disability can be proved by medical and lay testimony; the hearing officer’s factual determination whether the worker has discharged his burden of proof should not be disturbed on review absent manifest error. Bailey, 620 So.2d at 280; Bruno, 593 So.2d at 361. “[Reviewing courts must analyze claimed disability caused by mental conditions with utmost caution in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned.” Westley, 523 So.2d at 813; see also Williams v. Regional Transit Authority, 546 So.2d 150, 158 (La.1989).
Charles, 683 So.2d at 709.
After a careful review of the record we do not find the hearing officer was manifestly erroneously in the finding that Mr. Arwood did not meet his burden of proof that his psychological problems are causally related to his accident. It is clear from the record that Mr. Arwood’s emotional and psychological problems are long term, and did not develop as a result of the accident in which he injured his back. See; Pitre v. Oilfield Production Contractors, 94-961 (La.App. 3 Cir. 3/8/95), 651 So.2d 980. Because we so find, we pretermit discussion of the other errors assigned by claimant. The judgment of the trial court is affirmed.
AFFIRMED.