McCLENDON, J.
12An employee seeks review of an Office of Workers’ Compensation decision that terminated the employee’s indemnity and medical benefits related to a mental injury. For the reasons that follow, we reverse. We also render judgment to award the employee total permanent disability benefits.
FACTS AND PROCEDURAL HISTORY
Judy Green was employed by the East Baton Rouge Parish School Board as a custodian. Ms. Green was injured in the *94 course and scope of her employment with the East Baton Rouge Parish School Board on December 13, 1999, when she injured her back as she lifted a garbage can to place trash into a dumpster. The employer paid indemnity benefits until January 19, 2003, at which time benefits were terminated by the employer.
Subsequently, Ms. Green filed a claim for retroactive resumption of indemnity benefits, which was docketed as case # 03-01375. Therein, she alleged disability due to a mental condition arising from her December 13, 1999 accident. This culminated in a consent judgment signed on December 10, 2003, which ordered the employer to retroactively resume the payment of indemnity benefits and to pay Ms. Green’s expenses for psychiatric treatment.
Also, on December 5, 2003, the Office of Workers’ Compensation (“OWC”) appointed Dr. Glenn Estes, a psychiatrist, to evaluate whether Ms. Green’s psychiatric condition was related to her on-the-job accident of December 13, 1999. Dr. Estes subsequently performed the independent medical exam (“IME”) on April 20, 2004.
On December 1, 2005, the employer filed a “Disputed Claim for Compensation,” seeking termination of Ms. Green’s indemnity benefits, including termination of medical benefits for psychiatric treatment. The employer contended that Ms. Green’s “psychiatric problems are not the result of her work-related physical injury.” In response, Ms. Green filed an answer wherein she sought, among other things, permanent and total disability benefits pursuant to LSA-R.S. 23:1221(2)(a).
|sThe parties jointly submitted the matter on exhibits and briefs, with all exhibits, including the relevant medical records and depositions of the treating health care providers, being duly admitted. Following its consideration of the evidence, the OWC entered a written judgment on February 25, 2010, awarding Ms. Green temporary total disability benefits, but terminated “all indemnity and medical benefits arising out of a mental injury” from the date of judgment.
Ms. Green has appealed, asserting that the OWC erred in relieving the employer of liability for payment of benefits and medical expenses attributable to the mental aspects of her work injury. Ms. Green also asserts that the trial court erred in denying her permanent and total disability benefits.
DISCUSSION
Ms. Green contends that the December 10, 2003 consent judgment, which awarded her benefits for claims related to her mental condition, recognized that her mental condition was related to her work injury such that the judgment in effect became the “law of the case” on that issue. Ms. Green submits that the December 10, 2003 judgment conclusively controls the issue of whether she suffered a compensable mental injury as contemplated by LSA-R.S. 23:1021(8)(c) and (d). As such, Ms. Green asserts that the OWC could not review the causation issue, but could only terminate the award if the employer could show that Ms. Green’s psychiatric condition, along with her chronic pain, was no longer of sufficient severity to contribute to her current total disability.
As applied to workers’ compensation claims, however, we note that the OWC has continuing jurisdiction and “may, upon application by a party and after a contradictory hearing, make such modifications or changes with respect to former findings or orders relating thereto if, in [its] opinion, it may be justified.” LSA-R.S. 23:1310.8(A). In the consent judgment, although the employer agreed *95 to pay medical benefits related to the mental injury, the OWC made no specific ruling or finding regarding a causal connection. The parties further stipulated that that court “will order an IME for which JUDY GREEN is ordered to attend and fully cooperate.” The IME Order required Dr. Estes to specifically address, 14among other things, “diagnoses” and “causation of diagnoses.”[1] Accordingly, we cannot conclude that the consent judgment precluded the OWC from revisiting the issue of causation.
Nevertheless, Ms. Green asserts that the record reflects that her mental injury was caused by the December 13, 1999 accident. Ms. Green contends that there is no evidentiary basis to support the OWC’s conclusion that her psychiatric condition was not rendered symptomatic by her December 13, 1999 accident at work. Ms. Green asserts that she had no pre-accident history of serious psychological illness and if she had a predisposition, it was clear from her treating physician’s testimony that the accident caused a physical injury which triggered her disabling illness.
The Louisiana Supreme Court addressed the issue of compensation for mental injuries resulting from work-related accidents in Sparks v. Tulane Medical Center Hosp. and Clinic, 546 So.2d 138, 143-44 (1989), wherein it noted:
In so-called “physical-mental” injury cases, where a mental injury or illness develops secondary to an ascertainable physical injury, Louisiana courts have uniformly found that the employee is entitled to compensation benefits for any disability resulting from the mental injury and to reimbursement for medical expenses incurred in the treatment of that condition. See, e.g., Westley v. Land & Offshore, 523 So.2d 812 (La.1988) (employee suffered post traumatic stress syndrome secondary to physical injury caused by fall); Droddy v. Cliff's Drilling, Inc., 471 So.2d 223 (La.1985) (employee suffered depressive neurosis as “emotional overlay” to physical injury caused by fall). See also Jordan v. Southern Natural Gas. Co. [v. Southern Natural Gas Co.], supra, 455 So.2d [1217] at 1222 [(La.App. 2 Cir.1984)] (“[W]hen a plaintiff develops a disabling anxiety syndrome, traumatic neurosis, or other mental disorder as a result of a work related physical injury, he can recover compensation benefits even if he has recovered physically from the injury.”) Allowance of coverage in these “physical-mental” injury cases seems clearly appropriate under the Act’s definition of “injury,” which covers not only the initial injury suffered by the employee but also “such disease or infections as naturally result therefrom.”
Following the court’s opinion in Sparks, the Louisiana Legislature enacted LSA-R.S. 23:1021(8),[2] which states, in pertinent part:
|s(c) Mental injury caused by physical injury. A mental injury or illness caused by a physical injury to the employee’s body shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence.
*96 (d) No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
Thus, in order to prevail, a claimant must prove by clear and convincing evidence that the physical injury caused the mental injury. Further, the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and the diagnosis must meet the most current criteria established by the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders. Charles v. South Central Industries, 96-0883 (La.11/25/96), 683 So.2d 706, 709.
Although compensation laws are to be construed liberally in the claimant’s favor, the worker’s burden of proof is not relaxed. Charles, 683 So.2d at 709. Disability can be proved by medical and lay testimony; the hearing officer’s factual determination whether the worker has discharged his burden of proof should not be disturbed on review absent manifest error. Id.[3]
Ms. Green contends, however, that since the parties entered into the prior consent judgment, the burden of proof was on the employer, as mover, to show that the mental injury was not causally related or was no longer of sufficient severity to contribute to her current total disability. We need not address this argument, finding that Ms. Green, even if she bore the burden, established by clear and convincing evidence that her physical injury caused her mental injury.
|fiThe medical records set forth the history of Ms. Green’s back injury, which ultimately led to a failed back surgery in November of 2001. In a treatment note dated August 21, 2001, Dr. Sandra Weitz, who was treating Ms. Green for her back injury,[4] indicated that she instructed Ms. Green to “continue present psychological therapy.” Moreover, a December 3, 2001 progress note from Dr. Craig Waggoner, the clinical psychologist providing Ms. Green psychological therapy, indicated that Ms. Green “verbalized an understanding of the symptoms presented that are related to chronic pain and how chronic pain can cause depression.” Dr. Waggoner also indicated that Ms. Green should continue to participate in group therapy sessions to increase her knowledge of factors that contribute to her chronic pain problem and the appropriate self-management strategies.
In January 2002, due to continuing psychological problems, the employer’s nurse, Sharon Campo, referred Ms. Green to a psychiatrist, Dr. Kenneth Todd. Dr. Todd, who saw Ms. Green two or three times in 2002, diagnosed Ms. Green with depression and anxiety disorders, not otherwise specified. Dr. Todd testified that Ms. Green “had significant psychiatric difficulties long before her [December 13, 1999] injury” and that “she was treated [for psychiatric problems] in 1996.” Dr. *97 Todd further indicated that the work injury probably exacerbated her prior psychiatric condition, but that it was probable, with proper medication, that Ms. Green could return to work.[5]
In December 2002, Dr. Weitz had Ms. Green admitted to Our Lady of the Lake Regional Medical Center’s psychiatric unit due to severe depression and suicidal ideation. Ms. Green was released shortly thereafter, but was readmitted to the unit in January 2003, where she stayed for approximately two weeks. Dr. Ron Tarav-ella, a psychiatrist who treated Ms. Green during both hospitalizations, has treated Ms. Green continuously since her hospitalizations.
|7In a deposition taken in November 2003, Dr. Taravella, when asked whether there was a causal relationship between Ms. Green’s physical injury and her mental condition, recognized other stressors in Ms. Green’s life,[6] but indicated that “[t]he accident is the triggering mechanism in addition to being the straw that breaks the camel’s back.” Dr. Taravella opined that “it would be a disaster” for Ms. Green to return to work because she was “in a tremendous amount of pain. She has to take a tremendous amount of medication just to make it through the day. That interferes with her ability to pay attention, to concentrate, to focus mentally and to carry out tasks.” Dr. Taravella indicated that Ms. Green was “just about incapacitated,” and absent the December 13, 1999 accident, “she might have been able to carry on and continue to work.”
On April 20, 2004, Ms. Green saw Dr. Glen Estes, who was appointed by the court to perform an IME. Dr. Estes diagnosed Ms. Green with depression, not otherwise specified. Dr. Estes opined that Ms. Green’s “current emotional status is not supported by objective manifestations of major mental illness,” but indicated that it was possible the medications she was taking made her appear stable. Dr. Estes noted that he “found no evidence to say that her mental condition was a result of the December job injury” and there was “indication that significant emotional problems may have been preexisting.” Dr. Estes indicated that the “pain and consequences of a back injury” coupled with other life stressors, however, “could give a person some sort of emotional concerns.” Significantly, Dr. Estes noted that it was possible the mental injury could be related to the back injury, “but I didn’t find the evidence.” He conceded that Dr. Taravel-la had “more information probably” and that he had no reason to discredit Dr. Taravella’s opinion.
In a second deposition taken in April 2009, Dr. Taravella, who had continued to see Ms. Green at least once a month since December 2002, indicated that he maintained his original diagnosis — “depressive disorder | Rsecondary to a general medical condition, status post back surgery” — but added “probably a medication-induced psychosis” as an additional diagnosis. Dr. Taravella also acknowledged that Ms. Green had experienced depression prior to the accident at issue, but indicated that she was able to continue to function until the accident at issue. Dr. Taravella opined that although Ms. Green may have had a preexisting condition and may have had other stressors in her life, the back injury “caused her to become physically disabled, and the mental disability resulted therefrom.”
*98 A compensable “physical-mental” injury can be established by showing that any pre-existing mental illnesses or susceptibility to mental illness was triggered or aggravated by a physical injury, although compensation ceases if the aggravation is only temporary. See Our Lady of Lake Regional Medical Center v. Matthews, 06-1584 (La.App. 1 Cir. 9/26/07), 971 So.2d 354, 362 n. 9. Although the medical evidence reflects that Ms. Green may have had emotional problems prior to her accident at work, there is no indication that her condition was disabling. Rather, Dr. Taravella opined that the accident triggered or aggravated any preexisting mental illness. Further, Dr. Todd admitted that the accident probably exacerbated her psychiatric condition. Nothing in the record disputes these findings.
Dr. Taravella, the treating psychiatrist who recognized other stressors in Ms. Green’s life, opined that the work-related accident was the triggering mechanism for Ms. Green’s depression. Dr. Estes, who performed the IME, recognized that Ms. Green’s condition was “apparently a mix of physical and emotional factors,” although he was “not sure what the mix was.” Dr. Estes, however, never determined that Ms. Green’s mental injury was not related to the December 1999 work injury. Rather, Dr. Estes, who acknowledged that Dr. Ta-ravella had more detailed information and did not dispute Dr. Taravella’s opinion, was simply unable to confirm Dr. Taravel-la’s opinion. Thus, Dr. Taravella’s diagnosis of a mental injury caused by a physical injury was not negated by the IME. In light of the foregoing, we conclude that there is no [(¡reasonable basis in the record to support a finding that Ms. Green’s current disabling mental injury is not related to her December 13, 1999 injury.
Moreover, the general jurisprudential rule is that a treating physician’s opinion is given more weight than a non-treating physician’s opinion. McCray v. Delta Industries, Inc., 00-1694 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 272. In McCray, the treating neurologist and a second neurologist hired to perform an IME “had widely disparate conclusions” regarding an employee’s back and/or neck injury and whether the employee had reached maximum medical improvement. Id. After considering the entirety of the record, this court noted that more weight should have been accorded the testimony of the treating neurologist over the findings of the neurologist performing an IME, “absent some indicia of unreliability” in the treating neurologist’s findings. Id. A fortiori, the opinion of Dr. Taravella, as the treating psychiatrist whose findings have not been challenged, is entitled to significant weight insofar as there are no indicia of unreliability in his findings.
Additionally, Ms. Green asserts that the OWC erred in failing to award her permanent total disability. The OWC, in denying Ms. Green’s claims for mental injury, did not address Ms. Green’s claim for permanent total disability in its judgment. When a judgment is silent as to a claim or demand placed before the court, it is generally presumed that the court denied the relief sought. Greene v. State ex rel. Dept. of Corrections, 08-2360 (La.App. 1 Cir. 6/19/09), 21 So.3d 348, 350 n. 2. Further, it can be infeiTed from the OWC’s termination of mental injury benefits that it would not have found Ms. Green to be totally permanently disabled as a result of her mental injury. Accordingly, we conclude that the OWC denied Ms. Green’s request for permanent total disability.
Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not the same or one similar to that in which the employee was customari *99 ly engaged when injured. LSA-R.S. 23:1221(1)(a) and (2)(a); Joseph v. J.E. Merit Constructors, Inc., 01-1666 (La.App. 1 Cir. 6/21/02), 822 So.2d 72, 77, unit denied, 02-2295 (La.4/4/03), |1fl840 So.2d 1201. A workers’ compensation claimant seeking permanent total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment. Morgan v. Glazers Wholesale Drug Co., 46,692 (La.App. 2 Cir. 11/2/11), 79 So.3d 417, 421. If an employee is shown to be totally disabled at time of trial, and the disability is of indefinite duration, then the employee is entitled to benefits for total permanent disability, as opposed to those for temporary total disability. Mazoch v. Employers Cas. Co., 514 So.2d 1184, 1189 (La.App. 1 Cir.1987), unit denied, 517 So.2d 812 (La.1988).
In his April 2009 deposition, the following exchange occurred between counsel and Dr. Taravella:
Q. At any time ... between November of '03 and the present time, have you felt that [Ms. Green] was capable of working or ... any sort of — I guess at a pace required of somebody who had to regularly work?
A. I don’t see that happening.
Q. Okay. Now, back then you had indicated that you did not feel at that time she could do any kind of work on any sort of regular basis?
A. Back then, meaning at the time of the deposition in—
Q. Correct.
A. —November of '03?
Q. Right.
A. Right.
Q. Now, what is your opinion today as to whether she can do any sort of work on a regular sustained basis?
A. It is unchanged, but I think prog-nostically it is worse because I think at that time the jury, so to speak, was still out since I had only known her for less than a year at that point, and there was always some hope that she would get better. But now we are fast-forwarding five and a half years into the future, and there has been no improvement. So I would imagine that this is her new base line level of functioning.
Q. Now, she is now, I think, 50 years old, is that correct?
A. Her date of birth is March, 1959. So, she just turned 50 about a month ago.
luQ. I know at the time you had indicated, I think, a pretty much guarded prognosis for her future employability, although you said that at that time you didn’t think she would work any or do any work for the foreseeable future. Would it be fair to say that in view of the passage of time and her condition being what it is, that it would be your professional opinion at this point that she will likely never be able to be gainfully employed at really any job on a sustained basis?
A. That is correct.
Q. And the reasons for that, Doctor, would you just—
A. Well, based on her present mental status, her inability to function without the high potency pain killers and their clouding effect on her mentation, as well as the chronic pain that she suffers, she has a lot of pain sitting in one position or standing in one position for any length of time, plus her mind is so cloudy with all the medications that she requires to control the pain, I just don’t see that changing.
Based on her treating physician’s unrebut-ted testimony, we conclude that Ms. Green met her burden of showing, by clear and *100 convincing evidence, that she is unable to engage in any type of employment and that her disability is of indefinite duration. Therefore, she is entitled to permanent total disability benefits.
CONCLUSION
For the foregoing reasons, the February 25, 2010 decision is reversed insofar as it terminated “all indemnity and medical benefits arising out of a mental injury.” We also render judgment ordering that Ms. Green be awarded permanent total disability benefits in accordance with LSA-R.S. 23:1221(2). We remand this matter to the OWC for further proceedings consistent with this opinion. Costs of this appeal in the amount of $551.69 are assessed against the employer, the East Baton Rouge Parish School Board.
REVERSED IN PART; AFFIRMED IN PART; RENDERED; MATTER REMANDED.

. Although the court ordered the parties to prepare a joint "Statement of Issues” to be delivered to Dr. Estes prior to the IME, Dr. Estes indicated that he did not receive the statement.

. Subparagraph 8 was originally designated as subparagraph 7 when it was adopted by 1989 La. Acts No. 454, § 1, effective Jan. 1, 1990. The provisions of this subparagraph are unchanged.

. Under the manifest error standard of review, the court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart, 617 So.2d at 882.

. Dr. Weitz was continuing to treat Ms. Green at the time of trial.

. Dr. Todd Never saw Ms. Green after 2002.

. Dr. Taravella noted that Ms. Green's husband was sick and had recently had a second amputation and that Ms. Green was also raising her eight-year-old granddaughter.